# WILLIAM ADAIR Et Al.

*vs.*

# O. H. BROWNING, Secretary of the Interior.

An act of Congress for the erection of a jail in the District of Columbia detailed the manner in which the work was to be done, and provided that one-half the cost thereof should be paid by the Government, and the other half by a tax to be levied upon the persons and property of the District, and placed the execution of the law under the supervision of the Secretary of the Interior. On a bill for an injunction filed by certain citizens of the District, stating themselves to be interested as tax payers in the proper execution of the law, and alleging an illegal departure by the Secretary from the direction of the statute in the erection of the building, the Court, without deciding as to its power to enjoin at the proper time the collection of the tax if the building were erected in an unauthorized manner, *held*, that the bill in this case was premature and would only lie, if at all, when there was an attempt to collect the tax.

Equity 1074. Decided October 26, 1867.

BILL for an injunction. Certified to the General Term for hearing in the first instance.

THE FACTS are sufficiently appear in the opinion.

MESSRS. BURGESS & PIERCE and O. D. BARRET for complainants.

MR. CHIEF JUSTICE CARTTER delivered the opinion of the Court:

The Court are unanimously of the opinion that the application for an injunction in this case is premature, and must, therefore, be denied.

It is not, however, because we are satisfied that the law has been complied with, or that there may not great mischief ensue to the public from the want of compliance that

we refuse the injunction; for, taking the allegation of the bill to be true, and for the purposes of this proceeding they must be so taken, we are forced to the conclusion that the law has not been complied with. What has chiefly ruled the mind of the Court in the determination it has resolved, is the conviction that at present the complainants, upon their own showing, have no standing in Court. The subject of the complaint does not bring them within reach of the relief they seek.

This law* provides for the erection of a jail for the District of Columbia at an expense of $200,000, and payment of one-half ($100,000) is charged upon the District, the other half upon the Federal treasury. For the purpose of convenience, and perhaps economy, the bill provides for the payment by the Federal Government, out of the Federal treasury, of the whole amount, the treasury to be refunded one-half thereof by the District. The contribution of the $100,000 by the District is made subordinate to the payment by the Federal treasury of the whole amount and is treated as a re-imbursement, it having been provided by the bill that contemporaneously with the progress of the structure, the Secretary of the Interior might compel the contributions of the moiety of the District by a tax on its citizens and property. This condition of the law raises the question at what period may the citizen of the District intervene for his protection from its violation, if he can interfere at all? Can he anticipate his liability to the impost, or is he postponed until the government functionary sees fit to enforce his contribution? Now, we think, if he is to have a standing in Court at all it comes with the contribution. He cannot take such standing in advance on a mere threatening. There must be a personal liability in fact. The burden must be direct and attach to him before he can make it available as a ground for legal interference. That time has not arived. The attempt to collect taxes has not been

*Act of July 25, 1866.

made, and a case has not matured for our interference if we are to interfere at all. The bill is therefore dismissed.

MR. JUSTICE WYLIE said:

I wish to add something to what has been said.

Congress provided for the erection of a jail here, and provided that the law should be carried into execution under the supervision of the Secretary of the Interior. It provided that the building should not cost more than $200,000; that in the first place the $200,000 should be paid out of the treasury of the United States, the treasury to be afterwards re-imbursed by taxes levied upon the persons and property of the District of Columbia under the direction of the Secretary of the Interior.

The bill in this case was filed by certain persons who allege that they are citizens of the United States and tax payers of the District of Columbia, and seeks to restrain the secretary from an illegal departure from the duty devolved upon him. This duty is not a mere ministerial proceeding, but an executive duty. Congress has the power to erect public buildings, to erect a jail, and devolves this duty upon the secretary to be discharged after a certain general plan. I think that the duty thus conferred is cleary executive under the admirable distinction between an executive and a ministerial duty as drawn by the Chief Justice of the Supreme Court in the recent case of the State of Mississippi *vs.* Johnson. "A ministerial duty is one in respect to which nothing is left to discretion. It is a simple definite duty, arising under the condition admitted or proved to exist and imposed by law."

We have no jurisdiction over the case in my opinion. These parties come here as tax payers. It is not said what kind of tax payers they are or how they are interested, whether it is themselves or the other parties who, according to the bill, are to come in hereafter, and who possess a tangible interest in the matter as tax payers. I do not know whether the complainants show themselves as having suffi-

cient interest to call out the action of the Court, but I do know that it has been held beneath the dignity of a Court of Chancery to act upon insignificant interests, such as in this country do not amount to fifty dollars, and in England to fifty pounds.

Again if these parties have a right to come here as tax payers of the District, they have the right to come as tax payers of the United States; the principle is the same. And then a secretary could not build a fort or a ship, or erect a court-house in any part of the country, but some disappointed contractor in some portion of the United States would appear by some friend in some one of the Circuit Courts seeking an injunction on the ground that the secretary had not complied with the law, and the result would be that Courts would be turned from judicial duties and become Executive Departments, appointing receivers, akming contracts and superintending contracts, &c. I think the decisions quoted from New York were forced upon the Courts by the manifest and outrageous malpractices of the officials, and the pressure of public opinion. But these decisions have been rebuked and reversed by the Supreme Court.

It is only when the tax payer is himself subjected to some loss in consequence of the improper execution of the law that he can ask the aid of the Court. For illustration: If as in this case, Congress had provided a certain site for a jail on some public reservation, if the Secretary of the Interior failed to observe that provision of the law, and proceeded to seize private property by process of condemnation, or without process at all, then the owner of the property could come and claim an injunction. When an executive officer does not confine himself within the authority but abuses it to the direct detriment of a private individual, he can be enjoined.